## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **DICKSON PROPERTIES, LLC** | ) | **Case No. 11-18617-BFK** |
| | ) | **Chapter 11** |
| _____ | ) | |
| | ) | |
| In re: | ) | **Case No. 11-11656-BFK** |
| **PROVIDENCE HALL** | ) | **Chapter 11** |
| **ASSOCIATES, LLC** | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on (a) the Motion (Docket No. 45) of the United

States Trustee to Show Cause why Sanctions Should not be Imposed, and (b) this Court's Order

(Docket No. 46) directing counsel for the Debtor, Mr. Bowman, to appear and show cause why

sanctions should not be imposed.  Case No. 11-18617-BFK.  The Court held an evidentiary

hearing on April 17, 2012, at which Mr. Bowman was present ("the Sanctions Hearing").  The

Office of the United States Trustee was represented by Mr. Guzinski.  Mr. Bowman testified in

his own defense, and the parties introduced Exhibits, without objection.  At the conclusion of the

hearing, the Court allowed post-hearing briefs.  The record is now closed, and the matter is ripe

for a ruling.[1]

### Findings of Fact

The Court makes the following findings of fact:

---

[1]  The United States Trustee's Motion was filed, and the Court's Order was issued, in the Dickson Properties case,
Case No. 11-18617.  This Memorandum Opinion, and the accompanying Orders, are being filed in both the Dickson
Properties case and in the Providence Hall case.

**A.  The Providence Hall Bankruptcy Filing.**

1.      The bankruptcy case of *In re Providence Hall Associates* (Case No. 11-11656-BFK) (hereinafter, "Providence Hall") was filed as a voluntary Chapter 11 case on March 9, 2011.

2.      Mr. Bowman did not file the Providence Hall bankruptcy petition.  Rather, it was filed by Mr. Dunlap of the law firm of Dunlap, Grubb & Weaver, PLLC.  Case No. 11-11656-BFK, Docket No. 1.

3.      The Providence Hall Schedules, filled out and signed by Mr. Guerrero as Providence Hall's debtor representative, identified on Schedule A the following property:  "Food Lion, free-standing building w/ 5-20 year lease remaining; Held By Dickson LLC; Location: 303 Henslee Dr., Dickson, TN 37055" (hereinafter, the "Dickson Property").  *Id.,* at Schedule A.

4.      On May 26, 2011, during the pendency of the Providence Hall bankruptcy case, and without Court approval, Dickson Properties, LLC executed and recorded a Quitclaim Deed in the land records of Dickson County, Tennessee.  The Quitclaim Deed purported to transfer the sole asset of Dickson Properties, the Food Lion shopping center, to Providence Hall for no consideration.  The purpose of the transfer was to obtain the benefit of the automatic stay for the Dickson shopping center, which was (and is) subject to a lien in favor of Wells Fargo, and which was in danger of being foreclosed.

5.      On August 5, 2011, Judge Mitchell of this Court ordered that adequate protection be paid to Wells Fargo.  Case No. 11-11656-BFK, Docket No. 116 (the "Adequate Protection

Order"). In his Order, Judge Mitchell ordered that the Debtor, Providence Hall, collect and use

the rents from the Dickson Property to make the adequate protection payments.[2]

6.     On October 14, 2011, Mr. Bowman filed an Application to be Employed as

counsel for the Debtor in Possession in the Providence Hall bankruptcy case. Case No. 11-

11656-BFK, Docket No. 171.

7.     On October 31, 2011, the Court entered an Order directing the appointment of a

Chapter 11 Trustee in the Providence Hall case. Case No. 11-11656-BFK, Docket No. 184. The

Court confirmed the United States Trustee's appointment of Mr. Albert as the Chapter 11

Trustee on November 23, 2011. Case No. 11-11656-BFK, Docket No. 199. The Court later

approved the employment of Mr. Albert's firm as his counsel, *id.* at Docket No. 206, and the

employment of a management company for the Providence Hall assets. *Id.* at Docket No. 213.

8.     On November 23, 2011, the Court denied Mr. Bowman's Application to be

employed as counsel for Providence Hall, for two reasons: (a) Mr. Bowman had an insoluble

conflict of interest, in that he represented Dickson Properties, the grantor of the Quitclaim Deed;

and (b) with the appointment of the Chapter 11 Trustee, there was no basis to employ counsel

under Section 327(a). Case No. 11-11656-BFK, Docket No. 198. *See also* 11 U.S.C. § 327(a)

("[T]he trustee [which includes the Debtor in Possession, per Section 1107(a)], with the court's

approval, may employ one or more attorneys, accountants, [etc.]").

9.     Mr. Bowman continued to file pleadings on behalf of the Debtor, Providence

Hall, notwithstanding the appointment of a Chapter 11 Trustee, and notwithstanding the fact that

the Court had already denied his employment. On January 31, 2012, Mr. Bowman filed a

---

[2]   Providence Hall also was authorized to pay Mr. Guerrero the sum of $9,500 per month for management fees, despite the fact that Providence Hall had a property management company in place that managed the properties for a standard monthly fee. *See* Case No. 11-11656-BFK, Docket No. 116, Adequate Protection Order. Mr. Guerrero's payments came to an end when the Chapter 11 Trustee was appointed in the Providence Hall case.

Motion to Determine the Value of the Debtor's Real Property in the Providence Hall case.  Case No. 11-11656-BFK, Docket No. 222.  He filed a Notice of Hearing (Docket No. 223), and a Memorandum in Support of this Motion (Docket No. 226).

10.      On February 3, 2012, the Court denied Mr. Bowman's Motion, ruling that he had no authority to represent the Debtor where a Chapter 11 Trustee had been appointed.  Case No. 11-11656-BFK, Docket No. 227.  Mr. Bowman was warned that any further filings in the name of the Debtor could cause him to be sanctioned.  *Id.*

11.      On March 28, 2012, Mr. Bowman filed a Disclosure Statement and a Plan of Reorganization in the Providence Hall case on behalf of Mr. Guerrero and Ms. Ford.  Case No. 11-11656-BFK, Docket Nos. 242 & 243.  Both Wells Fargo and the Trustee objected to the Disclosure Statement.  Case No. 11-11656-BFK, Docket Nos. 251 and 252.

12.      On May 1, 2012, in the middle of the Disclosure Statement hearing, Mr. Bowman stood up and announced that he was withdrawing the Disclosure Statement.  Case No. 11-11656-BFK, Docket No. 256.

13.      The Trustee has filed two adversary proceedings, against Mr. Guerrero and Ms. Ford, to recover monies paid to them by the Debtor.  *Albert, Trustee v. Guerrero*, Adv. Pro. No. 12-1101-BFK; *Albert, Trustee v. Ford,* Adv. Pro. No. 12-1102-BFK.  Mr. Bowman recently has entered his appearance on behalf of Mr. Guerrero and Ms. Ford in the two adversary proceedings filed by the Trustee.  *Id.*

**B.  The Dickson Properties Filing.**

14.      Dickson Properties filed a voluntary petition on December 1, 2011.  Case No. 11-18617-BFK, Docket No. 1.  Mr. Bowman filed the petition, as counsel for the Debtor.  *Id.*

15.     Prior to the filing, Mr. Bowman made a diligent search for the Operating

Agreement of Dickson Properties in an effort to determine its ownership.  He was unable to

locate the Dickson Operating Agreement before the case was filed.

16.     In filing the Dickson petition, Mr. Bowman relied on statements by Mr. Guerrero,

to the effect that Mr. Guerrero was the sole owner of Dickson Properties.

17.     Mr. Bowman testified at the sanctions hearing that the Dickson Properties, LLC

filing was an emergency filing because Mr. Guerrero and Ms. Ford wanted to intercept the rents

from Dickson's lease with Food Lion, instead of having them paid over to the Providence Hall

Trustee pursuant to the Adequate Protection Order.  *See supra* ¶ 5.

18.     Mr. Bowman further testified that, in his mind, there was a distinction to be made

between "Dickson Properties (Delaware)," and "Dickson Properties (Missouri)," prior to the

filing.

19.     In this regard, Ms. Ford testified that she set up Dickson Properties (Missouri)

because she and Mr. Guerrero could not find the documents for Dickson Properties (Delaware),

and they needed to open a bank account.  Mr. Bowman thought that there was an argument to be

made that the Grantor of the Dickson Quitclaim Deed was Dickson Properties (Missouri), which

was not the owner of the property.  However, after a hearing before this Court, in which the

Court questioned whether the Quitclaim Deed actually identified Dickson Properties (Delaware)

or Dickson Properties (Missouri) as the Grantor – it did not identify either - Mr. Bowman

became less enamored of his "wrong grantor" theory.[3]

---

[3] In the Court's view, not only did the Quitclaim Deed not specifically identify Dickson Properties (Delaware) or
Dickson Properties (Missouri) as the Grantor, but in executing the Deed and having it recorded, surely Mr. Guerrero
meant to do *something*.  Clearly, he intended to convey the property to Providence Hall Associates.

20.     In its Schedules, the Debtor listed a $950,000 preference claim against Providence Hall, apparently arising out of the transfer of the Dickson shopping center.  Case No. 11-18617-BFK, Docket No. 12, Sch. B.  Further, the Debtor listed Providence Hall as a co-debtor on the Wells Fargo indebtedness, which is secured by the Dickson shopping center.  *Id.* at Sch. H.

21.     The Debtor has never filed a Statement of Financial Affairs, as required by Bankruptcy Rule 1007(b)(1)(D).

22.     Mr. Bowman has filed a Rule 2016(b) Statement.  Case No. 11-18617-BFK, Docket No. 29.  However, he has not filed an Application to be employed in the case, pursuant to Bankruptcy Rule 2014(a).

23.     Mr. Bowman obtained the Operating Agreement for Dickson Properties on or about December 5, 2011.  Bowman Exh. F.  This document confirmed that Providence Hall was Dickson Properties' sole member.  Accordingly, Mr. Bowman had actual knowledge, as of December 5, 2011, that Mr. Albert, as Providence Hall's Trustee, was the sole owner of Dickson Properties, and therefore, the only party legally capable of making decisions for Dickson Properties.

24.     On December 27, 2011, Wells Fargo and Mr. Albert filed separate Motions to appoint a Chapter 11 Trustee in the Dickson Properties case.  *See* Case No. 11-18617-BFK, Docket Nos. 20 - 24.  Mr. Bowman, on behalf of the Debtor, responded by filing a Motion to Dismiss the case, on January 10, 2011.  *See* Case No. 11-18617-BFK, Docket No. 25.  In the Motion to Dismiss, the Debtor acknowledged that Providence Hall was its sole owner, and that

the Debtor's principal, Mr. Guerrero, did not have the authority to file the Chapter 11 petition.

*Id.* at ¶¶ 2-3.[4]

25.    Mr. Albert, as the Debtor's sole owner, promptly (the next day) filed a Statement ratifying the bankruptcy filing.  *See* Case No. 11-18617-BFK, Docket No. 28.

26.    Ten days later, on January 20, 2012, Mr. Bowman withdrew his Motion to Dismiss.  *See* Case No. 11-18617-BFK, Docket No. 30.  On the same day, Mr. Bowman filed a Motion to Dismiss on behalf of a creditor, Susan Ford.  *See* Case No. 11-18617-BFK, Docket Nos. 31-33.  Ms. Ford's Motion to Dismiss was identical in all respects to the Debtor's Motion to Dismiss; it simply changed the name of the moving party.

27.    Ms. Ford's Motion to Dismiss referenced an apparent distinction between "Dickson Properties (Delaware)" and "Dickson Properties (Missouri)."  *See* Case No. 11-18617-BFK, Docket No. 33.

28.    On January 26, 2012, the Court entered an Order: (a) denying Ms. Ford's Motion to Dismiss; (b) denying the Trustee's and Wells Fargo's Motions for the appointment of a Chapter 11 Trustee; and (c) naming Mr. Albert, as Chapter 11 Trustee of the Providence Hall bankruptcy estate, to serve as the Debtor's designated representative.  *See* Case No. 11-18617-BFK, Docket No. 36.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Order of Reference of the U.S. District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding, as a matter concerning the administration of the estate.  28 U.S.C. § 157(b)(2)(A).  Further, the Court has the inherent authority to regulate the conduct of attorneys

---

[4] How Mr. Bowman believed he had the authority to file any pleadings on behalf of the Debtor, after acknowledging that Mr. Albert was the Debtor's sole owner, is unexplained.

who appear before the Court. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–46, 111 S.Ct. 2123,

2131-132, 115 L.Ed.2d 27 (1991); *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*,

111 F.3d 1159, 1171 (4th Cir. 1997); *Parker v. N.C. Agric. Fin. Auth.,* 341 B.R. 547, 554 (E.D.

Va. 2006).

The United States Trustee's Motion for Sanctions asserts that the filing of the Dickson

Properties petition was a violation of Rule 9011.  Case No. 11-18617-BFK, Docket No. 45, p. 1.

In addition, the Court expressed its concern, in its Show Cause Order, that Mr. Bowman

appeared to be representing parties with interests adverse to that of the bankruptcy estate,

namely, Providence Hall and Ms. Ford, simultaneously with his representation of Dickson

Properties.  Case No. 11-18617-BFK, Docket No. 46.  The Court finds that Mr. Bowman has had

sufficient notice of the allegations that gave rise to this Opinion and Order, and that he has had

the opportunity to respond to each of the allegations.  Each of these matters will be addressed, in

turn.

### A.  The Unauthorized Dickson Properties Filing.

The filing of a bankruptcy petition is a serious matter.  The one exception to the 21-day

safe harbor ordinarily required for a sanctions motion under Rule 11 is the filing of a bankruptcy

petition.  *See* Bankruptcy Rule 9011(c)(1)(A) ("…except that this limitation shall not apply if the

conduct alleged is the filing of a petition in violation of subdivision (b)").

Bankruptcy Rule 9011(b)(3) requires that factual contentions in pleadings "have

evidentiary support or, if specifically so identified, are likely to have evidentiary support after a

reasonable opportunity for further investigation or discovery."  An attorney is under a duty to

*objectively* verify the facts underlying the filing of a petition.  *Winterton v. Humitech of N. Cal.,*

*LLC (In re Blue Pine Group, Inc.),* 457 B.R. 64, 75 (B.A.P. 9th Cir. 2011).  This duty is non-

delegable.  *Id*. at 77 ("[A]n attorney may not delegate his duty to validate the truth and legal reasonableness of papers filed with the court").

The United States Trustee's Motion asserts that the filing of the Dickson Chapter 11 petition was improper because it was not authorized.  At the time the Dickson petition was filed, Mr. Albert had been appointed as the Chapter 11 Trustee of the Providence Hall bankruptcy estate.  The Providence Hall schedules (Case No. 11-11656-BFK, Docket No. 1), which were filled out and signed by Mr. Guerrero as Providence Hall's debtor representative, identified the Dickson Property on Schedule A as an asset of Providence Hall, or at least identified Dickson Properties as being owned by Providence Hall.  Schedule A in the Providence Hall case states, with respect to the Dickson Property: "held by Dickson, LLC."  Case No. 11-11656-BFK, Docket No. 1, Sch. A.  The Court finds that when Mr. Bowman entered his appearance in the Providence Hall case on September 28, 2011 (Case No. 11-11656-BFK, Docket No. 162), he had constructive, if not actual, knowledge of the contents of the Providence Hall Schedules.

Mr. Bowman testified at the Sanctions Hearing that, prior to filing the Dickson petition, he made an exhaustive search for the Operating Agreement of Dickson Properties in order to determine the identity of its members.  He also testified that Mr. Guerrero repeatedly advised him that he was the sole owner of Dickson Properties.  At the same time, Mr. Bowman acknowledged that Mr. Guerrero was very ill, had suffered two heart attacks, was on medication, and was not reliable at all in terms of his memory.  Indeed, Mr. Bowman expressly and repeatedly disavowed Mr. Guerrero's sworn testimony at the first meeting of creditors in the Dickson Properties case as being wholly unreliable.[5]

---

[5]  Mr. Guerrero testified at the meeting of creditors that Mr. Bowman had not requested a copy of the Dickson Operating Agreement prior to the filing.  Mr. Bowman disputed this, testifying that he had repeatedly asked for a copy.  At the Sanctions Hearing, Mr. Guerrero acknowledged that his testimony in this regard was inaccurate.  Mr.

The Court accepts Mr. Bowman's testimony that his search for the Dickson Operating Agreement was exhaustive prior to the filing of the petition on December 1, 2011. At the same time, the Court finds that Mr. Bowman's search produced nothing to contradict the *known* documents concerning Dickson's ownership – the Wells Fargo loan documents, the tax returns, and the Schedules in the Providence Hall case – all of which indicated that Dickson was a wholly-owned subsidiary of Providence Hall. The known documents did not indicate that Mr. Guerrero owned Dickson Properties.[6] Mr. Bowman elected to ignore the known documents indicating that Providence Hall owned Dickson, in favor of Mr. Guerrero's unsupported statements that he owned Dickson, at a time when Mr. Bowman affirmatively asserts that Mr. Guerrero's memory was wholly unreliable. In each case, Mr. Bowman asserts that the known documents "were not sufficient evidence" to disregard Mr. Guerrero's statements to the contrary, or that the documentation was "not conclusive proof" of Dickson's ownership. Case No. 11-18617, Docket No. 67, Bowman Post-trial Brief, pp. 9-10, 12. Yet, the known documents – including the Schedules signed by Mr. Guerrero himself in the Providence Hall case – clearly were "warning lights" to Mr. Bowman that Mr. Guerrero's understanding of the ownership of Dickson could not be trusted, nor relied upon. Plainly, there was no objectively reasonable basis

---

Bowman also disputed having received a $10,000 retainer in the case, something to which Mr. Guerrero testified at the meeting of creditors. Mr. Guerrero acknowledged at the Sanctions Hearing that this testimony likewise was inaccurate.

[6] The Food Lion Lease also confirmed that Providence Hall owned Dickson. At the Sanctions Hearing, Mr. Bowman could not recall seeing the Food Lion lease prior to the filing on December 1, 2011. In his post-trial Brief, however, Mr. Bowman stated: "I examined the Food Lion lease before filing the Dickson case." Case No. 11-18617, Docket No. 67, p. 9. For various reasons, Mr. Bowman found the lease not to be reliable evidence of Dickson's ownership. *Id.* at pp. 9-10.

for the filing of the Dickson petition under Mr. Guerrero's signature.  The Court therefore finds

that Mr. Bowman violated Bankruptcy Rule 9011(b)(3) in filing the Dickson Properties petition.[7]

Moreover, the Court finds that the filing of the Dickson Properties petition was filed for

an improper purpose, in violation of Bankruptcy Rule 9011(b)(1).  In the Providence Hall case,

the Court had authorized Providence Hall to use the rents generated by the Food Lion property to

pay adequate protection payments to Wells Fargo.  Mr. Bowman testified that the Dickson

Properties petition was filed as an emergency filing on December 1, 2011, in order to intercept

the stream of Food Lion rents that would otherwise have paid to Wells Fargo.  In other words,

the purpose of the Dickson bankruptcy filing was nothing more than an attempted end-run

around Judge Mitchell's Adequate Protection Order in the Providence Hall case.  This was

plainly an improper purpose, in violation of Bankruptcy Rule 9011(b)(1).

B.   *The Simultaneous, and the Successive, Representation of Dickson Properties and
      Providence Hall.*

In representing a Debtor in a Chapter 11 case, counsel must be disinterested.  11 U.S.C.

327(a).  It is well accepted that counsel for the Debtor is not disinterested where counsel also,

simultaneously, represents the recipient of a potentially avoidable transfer.  *In re Lewis Road,*

*LLC,* No. 09-37672, 2011 WL 6140747, at *7 (Bankr. E.D. Va. Dec. 9, 2011) ("[B]ankruptcy

courts have widely held that an adverse interest means either (1) the possession or assertion of

any economic interest that would tend to lessen the value of the bankruptcy estate or create an

actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias

---

[7]  In his Post-trial Brief, Mr. Bowman raises the possibility that there may be an Amendment to the Dickson
Operating Agreement that would show Mr. Guerrero to be Dickson's sole owner.  Case No. 11-18617, Docket
No. 67, Bowman Post-trial Brief.  Mr. Bowman states: "I never found the first amendment to the Operating
Agreement, which I still assume shows that Victor Guerrero is the sole member of Dickson."  *Id.* at p. 2.  It is
precisely this kind of unsupported supposition, contradicted by the known documents, that forms the basis of the
United States Trustee's Motion.

against the estate"); *In re Granite Partners, L.P.,* 219 B.R. 22, 33 (Bankr.S.D.N.Y.1998) ("[T]he professional has a disabling conflict if it has 'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one'" (quoting *In re Martin*, 817 F.2d 175, 180 (1st Cit. 1987))).[8]  As described above, Dickson was the Grantor, and Providence Hall was the Grantee, of the Quitclaim Deed.  Dickson listed the transfer to Providence Hall as a potentially avoidable preference in its Schedules.  This presented a conflict for Mr. Bowman from the inception of the Dickson Properties case.[9]

Mr. Bowman's defense is that, after the Court denied his employment in the Providence Hall bankruptcy case on November 23, 2011, he no longer had a conflict.  Putting aside (for the moment) the notion of the continuing duty of loyalty after the termination of an attorney-client relationship, the fact is that Mr. Bowman continued to represent Providence Hall Associates after he filed the Dickson petition on December 1, 2011, and well into January and February 2012.  On January 31, 2012, Mr. Bowman filed, in the Providence Hall case, a Motion to Determine the Value of the Debtor's Real Property on behalf of the Debtor.  Case No. 11-11656-BFK, Docket No. 222.  He later filed a Notice of Hearing (Docket No. 223), and a Memorandum in Support of

---

[8]  According to Ms. Ford's testimony, Mr. Ludwig, the attorney who initially filed the Providence Hall petition, properly declined to represent Dickson Properties.

[9]  The Schedules in the Dickson case state that the transfer may have been avoidable as a preference.  It is more likely that, if the transfer is avoidable at all, it would be avoidable as a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), since it does not appear that Providence Hall was an antecedent creditor of Dickson.  *See* 11 U.S.C. §547(b)(1) and (2) (Transfers must be "to or for the benefit of a creditor," and "for or on account of an antecedent debt owed by the debtor before such transfer was made").

this Motion (Docket No. 227).  This presented a simultaneous-representation conflict not only in the Dickson Properties case, but in the Providence Hall case as well.[10]

Further, even assuming that Mr. Bowman's employment ended when the Court denied his Application for Employment on November 23, 2011, counsel may not be employed after the termination of an attorney-client relationship in a matter adverse to the former client if the matter is substantially related to the prior representation.  Local Rule 2090-1(I) of this Court provides: "[t]he ethical standards relating to the practice of law in this Court shall be the Virginia Rules of Professional Conduct now in force and as hereafter modified or supplemented."  Virginia Rule of Professional Conduct 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

When combined with the overlay of the "disinterestedness" standard (11 U.S.C. § 327(a)), there can be no consent by the Debtor in possession without full disclosure to, and approval by, the Court.  *See In re Lewis Road, LLC,* No. 09-37672, 2011 WL 6140747, at *10 (Bankr. E.D. Va. Dec. 9, 2011) ("[E]ven if the conflict was waivable under the Virginia Rules of Professional Conduct, [counsel] must independently satisfy the requirements of § 327"); *In re MF Global Inc.,* 464 B.R. 594, 605 n.9 (Bankr. S.D.N.Y. 2011) ("in a retention approved pursuant to Section 327 . . . conflicts waivers rarely suffice to trump the strict requirement of disinterestedness").  In any event, Mr. Albert, the person who owned and controlled both Dickson Properties and Providence Hall Associates, never consented.

---

[10]  Mr. Bowman was advised by the Court in the Providence Hall case that he no longer had the authority to represent the Debtor after the appointment of the Chapter 11 Trustee, and that any further representation of the Debtor without the Trustee's consent, and without approval of the Court, could subject him to sanctions.  Case No. 11-11656-BFK, Docket No. 227.

The twin goals under Virginia Rules of Professional Conduct 1.9 are the preservation of

confidentiality for the former client, and the continuing duty of loyalty.  One Judge from this

District analyzed the issue as follows:

> The key to assessing "the question of attorney disqualification in the successive
> representation context" is assessing the substantiality of the relationship between
> the present and the prior representation. *Tessier,* 731 F.Supp. at 730. An attorney-
> client relationship with the past client is, of course, a predicate to the
> consideration of a conflict. *Id.* And, "once an attorney-client relationship has been
> established, an irrebuttable presumption arises that confidential information was
> conveyed to the attorney in the prior matter;" the moving party does not have the
> evidentiary burden of showing actual disclosure of confidences. *Id.* at 731.
> Where, as here, an attorney-client relationship was formed, and the interests of the
> past and former clients are materially adverse, then disqualification turns solely
> on whether the past and present representation are substantially related.

*Sunbeam Prods. v. Hamilton Beach Brands, Inc.,* 727 F.Supp.2d 469, 472 (E.D. Va. 2010).

Having reviewed the matter, the Court finds that the representation of Dickson Properties

and the representation of Providence Hall were substantially related.  Mr. Bowman could not

represent Providence Hall and Dickson Properties simultaneously, nor could he represent

Dickson Properties after he terminated his representation of Providence Hall.  Part of the duty of

debtor's counsel in a Chapter 11 case is to identify, and if warranted, pursue, assets of the estate,

including preference and fraudulent transfer claims.  The entire Dickson Properties filing was

premised on a recovery of the Food Lion shopping center from Providence Hall.  Conversely,

Providence Hall had an interest in retaining the Food Lion property, or at least using its rents to

fund the adequate protection payments to Wells Fargo, as ordered by the Court.  Mr. Bowman

had an insoluble conflict in representing both Debtors simultaneously and successively.

*C.  The Simultaneous Representation of Dickson Properties and Susan Ford.*

On January 20, 2012, Mr. Bowman filed a Motion to Dismiss the Dickson Properties case

on behalf of a creditor, Ms. Ford.  Case No. 11-18617-BFK, Docket No. 31.  The Motion to

14

Dismiss acknowledged that the petition had been improperly filed, and asserted that there was

"no purpose" to keeping Dickson in a bankruptcy case. Case No. 11-18617, Docket No. 31, ¶ 4.

This was an impermissible conflict of interest of the most basic kind, the simultaneous

representation of the Debtor and a creditor in a bankruptcy case.

Section 327(c) of the Code provides as follows:

> [A] person is not disqualified for employment under this section solely because of
> such person's employment by or representation of a creditor, unless there is
> objection by another creditor or the United States trustee, in which case the court
> shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

Here, there was no objection to Mr. Bowman's employment in the Dickson Properties

case.  This, however, is only because Mr. Bowman never filed an application for employment in

the case, and never disclosed his connections with creditors and other parties in interest, as was

required by Bankruptcy Rule 2014.  Bankruptcy Rule 2014 disclosure is not optional; it's

mandatory.  *See* Rule 2014(a) ("The application *shall* be filed. . . . The application *shall* state the

specific facts showing the necessity for the employment . . . and, to the best of the applicant's

knowledge, all of the person's connections with the debtor, creditors, and any other party in

interest . . . .") (emphasis added).  Mr. Bowman's argument, that the standard of

disinterestedness set forth in Section 327(a) is not implicated here because he never sought to be

employed by the estate (Case No. 11-18617-BFK, Docket No. 67, Bowman Post-hearing Brief,

pp. 15-16), misses the mark.  He unequivocally was required to file a Rule 2014(a) application

and verified statement, disclosing all of his connections with the Debtor, creditors, equity

security holders and other interests adverse to the estate.

15

Mr. Bowman testified at the Sanctions Hearing that he felt that his duties of loyalty ran to

Mr. Guerrero, Ms. Ford, and the *other* Dickson Properties entity (Dickson (Missouri)), not to the

entity for which he filed the Chapter 11 petition (Dickson (Delaware)).  Mr. Bowman argues in

his Post-hearing Brief:

> The Court should bear in mind that *I represented [Mr.] Guerrero.*  I assumed that he was
> telling me the truth.  I assumed that when I found the Operating Agreement it would
> prove that he was telling the truth.  I was not seeking the Operating Agreement to
> disprove his claim; I was seeking the Operating Agreement to prove that his claim was
> true.  *My goal was to advocate for him.*

Case No. 11-18617-BFK, Docket No. 67, Bowman Post-hearing Brief, p. 5 (emphasis added).

Mr. Bowman's assertion that his duties ran to the equity security holder (incorrectly

understood to be Mr. Guerrero), and a creditor (Ms. Ford), in a case in which he had filed the

petition for the Debtor, is just a fundamental misunderstanding of the role of Chapter 11 debtor's

counsel.  Mr. Bowman had an insoluble conflict of interest in the Dickson Properties case in

representing Mr. Guerrero and Ms. Ford.

### D.  The Representation of Mr. Guerrero and Ms. Ford in the Providence Hall Case.

Mr. Bowman has filed two Disclosure Statements and Plans on behalf of Mr. Guerrero

and Ms. Ford in the Providence Hall case.  Case No. 11-11656-BFK, Docket Nos. 242, 243, 264,

& 265.  Wells Fargo and Mr. Albert objected to the first Disclosure Statement.  *Id.* at Docket

Nos. 251 & 252.  The Court held a hearing on the adequacy of the first Disclosure Statement on

May 1, 2012.  Mr. Bowman announced abruptly, in the middle of the hearing, that he would

withdraw the Disclosure Statement.

Mr. Bowman also recently has entered his appearance on behalf of Mr. Guerrero and Ms.

Ford in two adversary proceedings filed by the Trustee in the Providence Hall case to recover

16

funds on behalf of the estate.  *See Albert, Trustee v. Guerrero*, Adv. Pro. No. 12-01101-BFK;

*Albert, Trustee v. Ford,* Adv. Pro. No. 12-01102-BFK.

As noted above, Mr. Bowman has a continuing duty of loyalty to the Providence Hall

estate, even after the Court has denied his Application for Employment.  *See* Virginia Rules of

Professional Conduct 1.9(a).  His representation of Mr. Guerrero and Ms. Ford, as creditors in

the Providence Hall case, violated, and continues to violate, his continuing duty of loyalty to the

Providence Hall estate.

E. *The Appropriateness of the Sanction.*

Bankruptcy Rule 9011(c)(2) (Nature of Sanctions; Limitations) provides as follows:

A sanction imposed for violation of this rule shall be limited to what is sufficient
to deter repetition of such conduct or comparable conduct by others similarly
situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may
consist of, or include, directives of a nonmonetary nature, an order to pay a
penalty into court, or, if imposed on motion and warranted for effective
deterrence, an order directing payment to the movant of some or all of the
reasonable attorneys' fees and other expenses incurred as a direct result of the
violation.

Federal Rules Bankruptcy Procedure 9011(c)(2).

With respect to the filing of the Dickson Properties bankruptcy petition, the Court finds

that Mr. Bowman relied entirely on the statements of Mr. Guerrero, whom Mr. Bowman believed

to be unreliable owing to medical reasons, and whose statements of ownership were contradicted

by documents known to Mr. Bowman.  To be fair, Mr. Bowman did make a diligent search for

the Dickson Properties Operating Agreement prior to filing the petition (though, as noted, he

found nothing that contradicted the known documents indicating that Providence Hall owned

Dickson Properties).  Further, after Mr. Bowman received a copy of the Dickson Operating

Agreement, he promptly conceded in his Motion to Dismiss that the filing was improper.  Were

17

the improper filing of the Dickson petition the only issue in the case giving rise to sanctions, the

Court might be inclined to impose the least drastic sanction available, in the form of a public

reprimand or the like, particularly because Mr. Albert ratified the filing.[11]  However, the filing of

the Dickson petition is not the only issue here, nor is it the most serious.

In addition to the Dickson filing problem:

- Mr. Bowman continued to represent a party with an adverse position to the Dickson Properties estate, Providence Hall Associates, which was the Grantee of the Quitclaim Deed.

- The filing of the petition on behalf of Dickson Properties was a violation of Mr. Bowman's continuing duty of loyalty to the Providence Hall bankruptcy estate, exposing the Providence Hall estate (at least according to the Schedules filed by Mr. Bowman in the Dickson Properties case) to an avoidance claim with a value of $950,000.  Case No. 11-18617-BFK, Docket No. 1, Sch. B, Question 33.

- Mr. Bowman then represented a creditor, Ms. Ford, in the Dickson case, the very case for which he had filed the Debtor's petition.

- He has represented, and continues to represent, Mr. Guerrero and Ms. Ford as creditors in the Providence Hall case.

Mr. Bowman's understanding, as he testified at the Sanctions Hearing, was that his duties

ran to Mr. Guerrero, Ms. Ford, and the *other* Dickson entity (Dickson (Missouri)), but not to the

Debtor for whom he had filed the petition, Dickson Properties (Delaware).  He also believed that

he was free to represent Mr. Guerrero and Ms. Ford in the Providence Hall case, despite his prior

---

[11] As noted, Dickson's owner, Mr. Albert, ratified the filing.  Case No. 11-18617-BFK, Docket No. 28.  Thus, management is not claiming any harm as a result of the filing (other than legal fees by the Trustee's firm in assessing the consequences of the filing), and the Debtor has had the benefit of the automatic stay since the case was filed.

representation of, and continuing duty of loyalty to, the Providence Hall estate. This is just a

fundamental misunderstanding of the duties and loyalties of counsel for the Debtor in a Chapter

11 case.

Finally, this is not Mr. Bowman's first brush with sanctions.  In March 2008, the

bankruptcy judges of the Western District of Virginia entered a Sanctions Order admonishing

Mr. Bowman, and directing that he complete a professional responsibility course.  *In re Bowman*,

No. 07-00701, Docket No. 16 (Bankr. W.D. Va. March 31, 2008).  This Sanctions Order arose

out of misconduct by Mr. Bowman in no less than seven consumer bankruptcy cases (*Perkins,*

*Bousman, Collins, Hicks, Greenway, Jacques and Hamlett*).  *See id.* at Docket No. 15.  The

sanction was upheld by Chief District Judge Jones of the Western District of Virginia.  *In re*

*Bowman,* No: 7:08CV00339, 2010 WL 2521441 (W.D. Va. June 21, 2010).

Accordingly, the Court finds that the following sanctions are appropriate in this case:

(1) The Court will prohibit and enjoin Mr. Bowman from filing a petition on behalf of, or

otherwise representing, any debtor, creditor or any other party in interest in a Chapter 11 case

(including contested matters and adversary proceedings in Chapter 11 cases) in this Court (to

include Alexandria, Richmond, Norfolk and Newport News) for a period of one year from the

date of the Order granting sanctions.[12]

(2) In order for Mr. Bowman to be eligible to represent a debtor, creditor, or any other

party in interest in a Chapter 11 case in this Court at the conclusion of the one year prohibition,

he must certify in writing to the undersigned Judge that he has taken 12 hours of bankruptcy

---

[12]   A review of the Court's docket indicates that the Providence Hall case and the Dickson Properties case are the
only Chapter 11 cases in which Mr. Bowman has entered his appearance as Debtor's counsel.  Mr. Guerrero and Ms.
Ford will need to find substitute counsel, in their respective adversary proceedings.

CLE courses, approved by the Virginia State Bar, which shall include not less than 2 hours of bankruptcy related ethics.

(3)  Mr. Bowman shall not apply for, and shall forfeit any right to, all compensation in the Providence Hall bankruptcy case and in the Dickson Properties bankruptcy case.  He shall be entitled to apply his $1,000 retainer to the filing fee that he advanced in the Dickson Properties case (owing to the fact that the Mr. Albert ratified the filing, and would have had to pay the filing fee himself in order to file the case).  Other than the reimbursement of the filing fee in the Dickson Properties case, however, Mr. Bowman shall not be entitled to any compensation in the Providence Hall case or in the Dickson Properties case.

### Conclusion

The Court will enter separate Orders in both cases, incorporating the above sanctions.


Date:                                          _____
                                               Brian F. Kenney
                                               United States Bankruptcy Judge

Copies to:

Gary M. Bowman, Esquire
2728 Colonial Avenue, Suite 100
Roanoke, VA 24015
Counsel for Victor Guerrero and Susan Ford

Marc E. Albert, Esquire
Stinson Morrison Heckler LLP
1775 Pennsylvania Ave., N.W.
Suite 800
Washington, DC 20006
Chapter 11 Trustee for Providence Hall Associates Limited Partnership

Joseph Guzinski, Esquire
Office of the U.S. Trustee
115 South Union Street, Ste. 210
Alexandria, VA 22314

Victor Guerrero
9519 Salem Street
Manassas, VA 20110

Susan Ford
43312 Vestals Place
Leesburg, VA 20176